| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:16-cr-00020-TLN |
| Plaintiff, | |
| v. | **ORDER** |
| RONDA BOONE, | |
| Defendant. | |

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

This matter is before the Court on Defendant Ronda Boone's ("Defendant") Emergency Motion for Bail Review Due to Changed and Extraordinary Circumstances Presented by the COVID-19 Pandemic. (ECF No. 247.) The Government filed an opposition. (ECF No. 248.) Defendant filed a reply. (ECF No. 250.) For the reasons set forth below, the Court DENIES Defendant's motion.

///
///
///
///
///
///
///

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

On February 10, 2016, a federal grand jury returned an Indictment charging Defendant and her husband with money laundering conspiracy and making a false tax return. (ECF No. 1.) Defendant was released on a $50,000 bond and ordered to follow a number of pretrial release conditions. On June 29, 2017, the grand jury returned a Superseding Indictment, adding two counts of engaging in monetary transactions greater than $10,000 in criminally derived property. (ECF No. 60.)

On April 24, 2018, the magistrate judge signed a Pretrial Release Violation Petition, which alleged that Defendant violated her conditions of release by applying for an expedited United States passport. (ECF No. 102.) Following a hearing on April 30, 2018, the magistrate judge found that Defendant violated her release but ordered Defendant to be released on an increased bond in the amount of $100,000. (ECF No. 107 at 33–34.)

Defendant remained on release through the duration of her jury trial. On January 31, 2019, the jury found Defendant guilty of three counts of the four-count Superseding Indictment. Count one charged money laundering conspiracy in violation of 18 U.S.C. § 1956(h). Counts two and three charged transactions in criminally derived property in violation of 18 U.S.C. § 1957. The Court denied the Government's request for remand and allowed Defendant to remain on release through sentencing. (ECF No. 155.)

On May 15, 2019, this Court signed a second Pretrial Release Violation Petition, which alleged that Defendant failed to report to Pretrial Services on May 6 and 13, 2019, and Defendant, through an agent, notified Pretrial Services on May 9, 2019, that she no longer intended to comply with her conditions of release. (ECF No. 184.) The hearing on the Violation Petition was set for May 16, 2019. (*Id.*) Defendant failed to appear for the hearing, and the Court issued a bench warrant. Defendant was arrested at her residence on May 30, 2019. (ECF No. 196.) On May 31, 2019, the magistrate judge ordered Defendant be detained pending sentencing. (ECF No. 191.)

On December 13, 2019, Defendant filed a motion for bail review, in which she argued she presented a low risk of flight and asked to be released to assist her daughter with childcare. (ECF

No. 236.) The Government opposed the motion and argued Defendant continued to pose a flight risk. (ECF No. 237 at 1–2.) On December 19, 2019, after a hearing on the motion, the Court denied Defendant's motion based on Defendant's risk of flight. (ECF No. 238.)

Defendant filed the instant motion on March 30, 2020. (ECF No. 247.) At this time, Defendant is in custody at the Nevada County Jail. Sentencing is currently set for April 23, 2020. (*See* ECF No. 240.)

**II.    ANALYSIS**

Defendant moves to reopen her detention hearing and for her immediate release pending sentencing. More specifically, Defendant argues that circumstances have radically changed since her last detention hearing due to the COVID-19 pandemic such that there is now a greater risk to Defendant's life if she is detained and a lower risk of flight if she is released. Defendant raises arguments under 18 U.S.C. § 3143(a), the Fifth Amendment, the Eighth Amendment, 18 U.S.C. § 3145(c), and 18 U.S.C. § 3142(i). The Court addresses Defendant's arguments in turn.

A.    <u>18 U.S.C. § 3143(a)</u>

Pursuant to 18 U.S.C. § 3142(f), a detention hearing may be reopened "if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." Release pending sentencing is governed by 18 U.S.C. § 3143(a), which requires detention "unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released." 18 U.S.C. § 3143(a)(1).

The Court previously denied Defendant's motion for bail review because Defendant failed to establish by clear and convincing evidence that she was not a flight risk pursuant to 18 U.S.C. § 3143(a). At the previous bail hearing, Defendant argued, among other things, that she had abandoned her "radical world view" and requested release pending sentencing to help her

3

daughter with childcare.[1]  Defendant suggested that alternatives such as electronic monitoring could mitigate her risk of flight.  In denying Defendant's motion, the Court emphasized that Defendant violated the conditions of her pretrial release not once, but twice.  First, Defendant sought an expedited passport to leave the country.  Then, despite being allowed to remain out of custody after her first violation, Defendant failed to report to Pretrial Services, expressed her intention to stop complying with her conditions of release, and failed to appear before this Court as ordered.  These actions resulted in issuance of a bench warrant for Defendant's arrest, which led to her current confinement.  The Court also noted that Defendant has repeatedly asserted her belief that this Court lacks jurisdiction over her and authorized her agent to file several nonsensical documents to that effect.

In the instant motion, Defendant broadly describes the COVID-19 pandemic and the increased risks to those in detention facilities.  Defendant argues that she is no longer a flight risk because "the worldwide COVID-19 pandemic has shut down travel."  (ECF No. 247 at 14.)  The Court disagrees.  Despite generalized concerns about COVID-19, a determination of whether Defendant should be released requires an individualized assessment.  In other words, the COVID-19 pandemic in and of itself does not mitigate Defendant's risk of flight.  Defendant reports that she is 57 years old and has high blood pressure, but she fails to provide the Court with medical records to suggest that her hypertension is so severe as to put her at grave risk if she decides to flee.  In any event, although the COVID-19 pandemic certainly makes travel riskier and more difficult, travel is not impossible at this point in time.  Escape may in fact be easier based on the rapidly evolving nature of the pandemic and the precautions that law enforcement officers are taking to protect themselves.  Moreover, Defendant arguably has an even greater incentive to flee now that she has experienced many months of incarceration and faces a sentence of 97 months at the low end of the applicable sentencing guidelines range.

While the Court is mindful of the risks to Defendant if she remains in custody, those risks

---

[1]  Defendant repeats many of these same arguments in the instant motion, such as the fact that she has abandoned her radical world view and is needed to help her daughter with childcare.  The Court already considered and rejected those arguments at the previous hearing.

do not offset the reality that Defendant has repeatedly failed to obey this Court's orders and fails to establish by clear and convincing evidence that she is not a flight risk. Without more, the fact that Defendant is 57 years old and has high blood pressure does not justify release. Therefore, the Court declines to grant Defendant's request for release under 18 U.S.C. § 3143(a).

B. Fifth Amendment

Defendant argues the Fifth Amendment Due Process Clause compels the Court to protect pretrial detainees like her from punitive conditions of confinement and ensure she is afforded adequate medical care. According to Defendant, her confinement violates her Fifth Amendment rights due to the "extreme risk to [Defendant's] health posed by the virus and the ever-increasing likelihood that she will contract it if she remains housed under the current conditions." (ECF No. 247 at 8.)

In evaluating whether a condition of pretrial detainment violates the Fifth Amendment, the Court must determine whether the condition amounts to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). In *Bell*, the Supreme Court explained, "Absent a showing of an expressed intent to punish on the part of the detention facility officials, . . . if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id.* at 538–39.

At the outset, the Court notes that Defendant fails to explain how a purported Fifth Amendment violation would warrant her immediate release rather than some other form of relief. Regardless, Defendant fails to establish a Fifth Amendment violation primarily because her motion lacks case-specific evidence. Defendant makes generic arguments about the inadequate conditions of confinement generally, but she fails to demonstrate that those conditions are "arbitrary or purposeless." *See id.* at 539. Further, Defendant "has not shown that prison [or jail] authorities are unable or unwilling to address this serious problem within [facilities], or that [Defendant] is unable to take the general, protective measures applicable to all as of yet unafflicted persons, i.e., wash hands frequently, avoid touching the face and so forth." *Peterson v. Diaz*, No. 2:19-cv-01480-WBS-GGH, 2020 WL 1640008, *2 (E.D. Cal. Apr. 2, 2020). Moreover, as already discussed, Defendant fails to support her assertion that she is at an "extreme

5

risk" for COVID-19.  Based on the limited information before the Court, the Court finds Defendant's conditions of detention are reasonably related to legitimate government interests, namely, ensuring her appearance at sentencing.  Lastly, the Court has been in communication with the United States Marshal's Office who has indicated that as of today's date no detainees in the Nevada County jail have tested positive for COVID-19.  Obviously, this recent information does not support Defendant's assertion that she is at an "extreme risk" for COVID-19 while detained pending sentencing.  For these reasons, the Court declines to grant Defendant's request for release under the Fifth Amendment.

### C. Eighth Amendment

Defendant next argues that the Eighth Amendment's prohibition against cruel and unusual punishment compels release under these extraordinary circumstances.  However, Defendant admits she is considered a pretrial detainee.  (ECF No. 247 at 8.)  As the Government points out, the Eighth Amendment does not apply to pretrial detainees.  "Due process requires that a pretrial detainee not be punished.  A *sentenced* inmate, on the other hand, may be punished, although that punishment may not be 'cruel and unusual' under the Eighth Amendment."  *Bell*, 441 U.S. at 535 n.16 (emphasis added); *see also Demery*, 378 F.3d at 1029 (explaining that due process "prohibits all punishment of pretrial detainees, while the Eighth Amendment only prevents the imposition of cruel and unusual punishment on convicted prisoners").  Accordingly, the Court declines to grant Defendant's request for release under the Eighth Amendment.

### D. 18 U.S.C. § 3145(c)

Defendant also argues that the COVID-19 pandemic constitutes "exceptional circumstances" for release under 18 U.S.C. §3145(c).  However, 18 U.S.C. § 3145(c), which relates to release pending appeal, does not circumvent the condition that Defendant must establish by clear and convincing evidence that she is not a flight risk.  Rather, 18 U.S.C. § 3145(c) imposes an *additional* condition that allows a defendant subject to the Mandatory Detention Act of 1990[2] "who meets the conditions of release set forth in section 3143(a)(1) or (b)(1)" to be

---

[2] "Under the Mandatory Detention Act of 1990 . . . violent offenders, as well as those convicted of drug offenses with a maximum sentence of at least ten years in prison and those

6

eligible for release "if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." 18 U.S.C. § 3145(c).

It is unclear how § 3145 is relevant to the instant case as Defendant is neither seeking release pending appeal nor does she fall within the Mandatory Detention Act of 1990. Regardless, even if this Court applied § 3145(c), Defendant ignores the language of the statute that requires a person seeking release under 18 U.S.C. § 3145(c) to also meet the conditions for release under 18 U.S.C. § 3143(a)(1) or (b)(1). As discussed above, Defendant does not meet the conditions of release required by § 3143(a)(1) or (b)(1) because she fails to establish that she is not a flight risk. As such, Defendant's argument under 18 U.S.C. § 3145(c) is also unavailing.

### E. 18 U.S.C. § 3142(i)

Finally, Defendant argues there are "compelling reasons" for her release within the meaning of 18 U.S.C. § 3142(i). Under 18 U.S.C. § 3142(i), the Court may "permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason."

Compared to Defendant's argument that she is entitled to release under 18 U.S.C. § 3143(a), her argument under 18 U.S.C. § 3142(i) reads as an undeveloped afterthought. For example, Defendant heavily relies on *United States v. Stephens*, a recent COVID-19 release decision from the Southern District of New York, but she ignores the fact that the "compelling reason" for release in *Stephens* was the defendant's inability to prepare a defense, as opposed to general COVID-19 concerns. *See United States v. Stephens*, No. 15-CR-95 (AJN), 2020 WL 1295155, *3 (S.D.N.Y. Mar. 19, 2020) (finding that the suspension of all prison visits until further notice necessitated temporary release under § 3142(i) because it "impacts the Defendant's ability to prepare his defenses to the alleged violation of supervised release in advance of the merits [of his] hearing"). Here, by contrast, Defendant cannot argue she requires temporary

---

convicted of any offense with a maximum sentence of life imprisonment or death, are not eligible for release [pending appeal] simply because they meet [the 18 U.S.C. § 3143(b)(1)] requirements." *United States v. Garcia*, 340 F.3d 1013, 1015 (9th Cir. 2003).

release to prepare her defense because she has already been found guilty by a jury and is merely awaiting sentencing. Further, as discussed above, Defendant's generalized concern about COVID-19, without more, does not constitute sufficient grounds for release. As discussed, the Court lacks evidence that Defendant is at an extreme risk for severe illness or that the conditions of her confinement are inadequate in light of the legitimate need to detain her based on her history of disobeying the Court's orders and failure to appear. Therefore, the Court declines to grant Defendant's request for temporary release under 18 U.S.C. § 3142(i).

### III. CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendant's Emergency Motion for Bail Review. (ECF No. 247.)

IT IS SO ORDERED.

DATED: April 13, 2020

Troy L. Nunley
United States District Judge